EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br>    Recurrido<br><br>          v.<br><br>Celimar Calderón Díaz<br>   Acusada-Peticionaria | Certiorari<br><br>2002 TSPR 43<br><br>156 DPR _____ |

Número del Caso: CC-2001-228


Fecha: 5/abril/2002


Tribunal de Circuito de Apelaciones:
                        Circuito Regional VI


Juez Ponente:
                        Hon. Carlos Soler Aquino


Abogada de la Parte Peticionaria:
                        Lcda. Glorimar Acevedo Acevedo


Oficina del Procurador General:
                        Lcda. Yasmin Chaves Dávila
                        Procuradora General Auxiliar


Materia: Infr. Art. 404 Ley de Sustancias Controladas

        Este documento constituye un documento oficial del Tribunal
        Supremo que está sujeto a los cambios y correcciones del proceso
        de compilación y publicación oficial de las decisiones del
        Tribunal. Su distribución electrónica se hace como un servicio
        público a la comunidad.

El Pueblo de Puerto Rico

    Recurrido

        vs.                     CC-2001-228      CERTIORARI

Celimar Calderón Díaz

    Acusada-peticionaria

**Opinión del Tribunal emitida por el Juez Asociado SEÑOR REBOLLO LOPEZ**

San Juan, Puerto Rico, a 5 de abril de 2002

¿Constituye "motivo fundado" para un arresto sin orden judicial --exigido por las disposiciones de la Regla 11 de Procedimiento Criminal-- el recuerdo que tiene un agente del orden público de una fotografía de una persona, colocada en un cuartel de la policía, que, alegadamente, está "relacionada" con la investigación de un asesinato?

Esa es la interrogante que, en términos generales, debemos contestar y que, en específico y en relación con los hechos particulares del presente caso, debemos resolver.

I

Alrededor de las 11:45 p.m del 20 de abril de 2000, el agente  de la Policía de Puerto Rico Luis Meléndez Hernández, mientras regresaba del trabajo a su casa vestido de civil, pudo percatarse de la ocurrencia de un accidente de automóviles en la Avenida Troche, intersección con la Avenida Muñoz Marín, de Caguas, Puerto Rico. El agente se desmontó de su vehículo y se dirigió al lugar donde estaban los automóviles accidentados con el propósito de inquirir si alguna de las personas involucradas en el accidente necesitaba asistencia médica.

Estando en dicho lugar, y conforme surge del relato de los hechos que hizo la Sala Superior de Caguas del Tribunal de Primera Instancia en una resolución que emitiera respecto a una moción de supresión de evidencia que radicara la peticionaria Celimar Calderón Díaz —el agente Meléndez Hernández se:

> ". . .percató de la presencia de la acusada en el lugar del accidente ya que caminaba por la acera. Describe como lucía la acusada esa noche. La acusada le pregunta al Agente que si todavía trabajaba en la policía. Este le dice que ya no trabaja en la Policía, lo cual no era cierto. El Agente recuerda haber visto una foto de la joven acusada en el cuartel y se le relaciona a un asesinato. El agente sabe que el CIC estaba tratando de localizarla. En eso pasa una patrulla, el agente la detiene y solicita ayuda para arrestar a la acusada. Se monta en la patrulla y localiza a la acusada, se identifica como policía y cuando la va a arrestar ella deja caer toda lo que lleva en las manos al suelo. Entre lo que cae al suelo, el Agente registra y encuentra una bolsita plástica transparente conteniendo en su interior un polvo de supuesta cocaína. La arresta, lee las advertencias y la lleva a la división de drogas. Se realiza en presencia de la acusada la prueba de campo y da positivo a cocaína. El agente nunca perdió de vista

lo que dejó caer la acusada al suelo. Registra a la acusada en el cuartel de la policía y le encuentra una jeringuilla." (Énfasis suplido.)

Por estos hechos, se determinó causa probable —tanto para arresto, Regla 6 de Procedimiento Criminal, como causa probable para acusar, Regla 23 de Procedimiento Criminal, contra Calderón Díaz por supuestas violaciones a los Artículos 404 y 412 de la Ley de Sustancias Controladas, 24 L.P.R.A. secs. 2404 y 2411b. Radicados los correspondientes pliegos acusatorios, la representación legal de Calderón Díaz radicó ante el tribunal de instancia una moción de supresión de evidencia, sosteniendo que la intervención de los agentes del orden público había sido una completamente ilegal ya que no existía orden de arresto alguna contra ésta, con anterioridad a la referida intervención, como tampoco el agente tenía los "motivos fundados" para arrestarla el día 21 de abril de 2001, que requiere la antes mencionada Regla 11 de Procedimiento Criminal.

Mediante resolución a esos efectos, el tribunal de primera instancia determinó que el registro efectuado en el cuartel de la policía no fue contemporáneo al arresto por lo que el mismo fue irrazonable, ordenando la supresión de la evidencia ocupada en la cartuchera —esto es, la jeringuilla— la cual había motivado la denuncia por infracción al Artículo 412 de la Ley de Sustancias Controladas.

Ello no obstante, y en cuanto al Artículo 404, esto es, relativo a la posesión del sobre de cocaína, el tribunal

denegó la moción de supresión de evidencia, señalando que el agente tenía motivos fundados para pensar que la acusada había cometido un delito, independientemente de que el delito hubiese ocurrido o no, conforme la Regla 11 (c) de Procedimiento Criminal, ante, puesto que, según el testimonio del agente, a ésta se le relacionaba con un asesinato.

Inconforme con la determinación del tribunal primario, Calderón Díaz recurrió al Tribunal de Circuito de Apelaciones. El referido foro apelativo denegó el recurso de certiorari solicitado. Razonó que el agente que arrestó a la acusada tenía motivos fundados para creer que ésta había cometido un delito grave y que dicho arresto cumplió con los requisitos de la citada Regla 11(c) de Procedimiento Criminal. En vista a ello, la peticionaria Calderón Díaz recurrió, oportunamente, ante este Tribunal ––vía certiorari––, señalando que el tribunal apelativo intermedio incidió:

> ...al determinar que el policía que arrestó en este caso tenía motivos fundados en ley para arrestar a la peticionaria y que se cumplió con los requisitos de la Regla 11 (c) de Procedimiento Criminal.

Expedimos el recurso. Contando con las comparecencias de las partes, y estando en condición de resolver el mismo, procedemos a así hacerlo.

## II

El Artículo II, Sección 10, de la Carta de Derechos de la Constitución del Estado Libre Asociado de Puerto Rico

garantiza el derecho del pueblo a la protección de sus personas, casas, papeles y efectos contra registros, incautaciones y allanamientos irrazonables. Pueblo v. Cruz Calderón, res. el 16 de enero de 2002, 2002 TSPR 5; Pueblo v. Serrano Cancel, res. el 23 de abril de 1999, 99 TSPR 62; Pueblo v. Camilo Meléndez, res. el 16 de junio de 1999, 99 TSPR 94; Pueblo v. Blase Vázquez, res. el 23 de junio de 1999, 99 TSPR 98. Es en virtud de este mandato constitucional que, de ordinario, queda prohibido el arresto de personas o registros o allanamientos sin una previa orden judicial, apoyada la misma en una determinación de causa probable por un foro judicial.

La determinación de causa probable, por orden judicial, garantiza la dignidad e intimidad de las personas y sus efectos ya que interpone la figura imparcial del juez entre los funcionarios públicos y la ciudadanía, brindándose una garantía mayor sobre la legitimidad y razonabilidad de la intromisión por parte del Estado. Id.; Pueblo v. Colón Bernier, res. el 20 de abril de 1999, 99 TSPR 58; E.L.A. v. Coca Cola Bott. Co., 115 D.P.R. 197, 207 (1984). La protección de la intimidad y dignidad del individuo, frente a posibles actuaciones arbitrarias del Estado, es la razón detrás de la exigencia a los efectos de que las órdenes de registro y allanamiento tienen que describir específicamente el lugar que se registrará, las personas que se detendrán y la evidencia delictiva a ser ocupada. Pueblo v. Cruz Calderón,

ante; <u>Pueblo</u> v. <u>Colón Bernier</u>, ante; <u>Pueblo</u> v. <u>Serrano Cancel</u>, ante.

La antes señalada protección constitucional es de tal envergadura que el arresto, registro y allanamiento, sin orden judicial, <u>se presume inválido</u> por lo que le compete al Ministerio Público demostrar la legalidad y la razonabilidad del mismo. <u>Pueblo</u> v. <u>Serrano Cancel</u>, ante; <u>Pueblo</u> v. <u>Blase Vázquez</u>, ante; <u>Pueblo</u> v. <u>Colón Bernier</u>, ante; <u>Pueblo</u> v. <u>Rivera Colón</u>, 128 D.P.R. 672, 681 (1991); <u>Pueblo</u> v. <u>Vázquez Méndez</u>, 117 D.P.R. 170, 177 (1986). Por lo tanto, al cuestionarse la validez de un arresto o registro, <u>sin orden</u>, en una moción de supresión de evidencia, le corresponde al Ministerio Público el <u>peso de la prueba</u> para establecer la validez y legalidad de la intromisión estatal. Id.

Existe, naturalmente, una excepción estatutaria en torno a la salvaguarda constitucional de que todo arresto debe estar precedido por la expedición de una orden judicial. Dicha excepción, comprendida en la Regla 11 de Procedimiento Criminal, ante, establece que:

> Un funcionario del orden público podrá hacer un arresto sin la orden correspondiente:
> (a)  Cuando tuviera motivos fundados para creer que la persona que va a ser arrestada ha cometido un delito en su presencia. En este caso deberá hacerse el arresto inmediatamente o dentro de un término razonable después de la comisión del delito. De lo contrario el funcionario deberá solicitar que se expida una orden de arresto.
> (b) Cuando la persona arrestada hubiese cometido un delito grave (felony), aunque no en su presencia.
> (c) <u>Cuando tuviere motivos fundados para creer que la persona que va a ser arrestada ha cometido un delito grave (felony), independientemente de que</u>

**dicho delito se hubiere cometido o no en realidad.**
**(Énfasis nuestro.) 34 L.P.R.A. Ap. II, R.11**

Reiteradamente hemos expresado que el término "motivos fundados" contenido en la citada Regla 11 significa la posesión de aquella información o conocimiento que lleva a una persona ordinaria y prudente a creer que la persona a ser detenida ha cometido o va a cometer un delito. **Pueblo** v. **Colón Bernier**, ante; **Pueblo** v. **Ruiz Bosch**, 127 D.P.R. 762 (1991); **Pueblo** v. **Corraliza Collazo**, 121 D.P.R. 244 (1988); **Pueblo** v. **Martínez Torres**, 120 D.P.R. 496 (1988); **Pueblo** v. **Del Río**, 113 D.P.R. 684 (1980); **Cepero** v. **Tribunal**, 93 D.P.R. 245 (1966); **Pueblo** v. **Cabrera Cepeda**, 92 D.P.R. 70 (1965).

Por ende, al establecer y delimitar los criterios que comprende el concepto de motivos fundados, hemos expresado que el mismo es sinónimo de causa probable, término utilizado en el contexto de la expedición de una orden de arresto. **Pueblo** v. **Díaz Díaz**, 106 D.P.R. 348, 353 (1977); **Pueblo** v. **Martínez**, ante, 504. De esta manera se crea un balance entre la excepción estatutaria y las referidas salvaguardas constitucionales. Es decir, al exigirle al funcionario público el mismo *quantum* de prueba que se le exige cuando se enfrenta a un juez en solicitud de la emisión de una orden de arresto, registro o allanamiento, se limitan las circunstancias en que un funcionario pueda intervenir válidamente con una persona y sus efectos a través de dicha excepción; esto es, al imponer los mismos criterios de causa probable para arrestar sin orden, se evita una disparidad, constitucionalmente

insostenible, entre el mandato constitucional y la excepción

estatutaria.

Sobre este punto expresa el Profesor Ernesto Chiesa,

*Derecho Procesal Penal de Puerto Rico y Estados Unidos*, Vol.

I, sec. 6.12, 1991, pág. 387-388:

> Volviendo a la exigencia de causa probable para el arresto sin orden --requisito constitucional bajo la Enmienda Cuarta-- se trata de una probabilidad al menos tan fuerte como la requerida para la expedición judicial de una orden de arresto. Esto significa que si la información que tenía el agente al arrestar sin orden, hubiera sido insuficiente para obtener una orden de arresto, no había causa probable --motivos fundados-- para el arresto sin orden, con consecuencia de invalidez de tal arresto y de cualquier registro incidental.
>
> [...]
>
> Así, pues, "motivos fundados" en la Regla 11 de las de procedimiento criminal, el estándar para el arresto sin orden, forzosamente es equivalente a "causa probable" en el sentido constitucional bajo la Enmienda Cuarta, so pena de vicio constitucional. Por supuesto, queremos decir que "motivos fundados" (Regla 11) tiene que ser *al menos* tanto como "causa probable" bajo la Enmienda Cuarta, que aplica a Puerto Rico. Y como sería imprudente que significara más que causa probable, "motivos fundados" es equivalente a "causa probable".

Ante el paralelismo entre los requisitos de los "motivos

fundados" de la Regla 11 y la "causa probable" para expedir

una orden de arresto[1], lo determinante para convalidar el

arresto sin orden es si el mismo cumple con el requisito de

causa probable; es decir, si la información que tenía el

agente al momento de efectuar el arresto sin orden hubiera

sido suficiente para obtener una orden de arresto. En ese

-----

[1] Regla 6, 34 L.P.R.A. Ap. II R.6.

contexto, resulta importante resaltar que un juez <u>no</u> debe expedir una orden de arresto a base de meras sospechas; como tampoco, visto desde el otro lado de la moneda, <u>no</u> se necesita convencer al juez de que se violó la ley más allá de duda razonable. <u>Pueblo</u> v. <u>Serrano Cancel</u>, ante. Los "motivos fundados" constituyen el mínimo de información que razonablemente podría convencer a un juez de que existe "causa probable" para expedir una orden de arresto. Por ello, el agente que realice un arresto, sin la orden correspondiente, debe observar o estar informado de "<u>hechos concretos</u> que razonablemente apunten a la comisión de un delito". <u>Pueblo</u> v. <u>Colón Bernier</u>, ante.

Con el propósito de determinar si un agente tenía motivos fundados para arrestar, sin orden, a un ciudadano es indispensable analizar la información que le constaba a éste y el cuadro fáctico que éste tenía ante sí al momento del arresto para, entonces, determinar si esos hechos pudieron llevar a una persona prudente y razonable a creer que la persona que iba a ser arrestada había cometido, o iba a cometer, la ofensa en cuestión. Es decir, la determinación sobre la validez del motivo fundado y la legalidad del subsiguiente arresto, sin orden, de la persona se hará a base de <u>criterios de razonabilidad</u>. Como bien señala la Profesora Dora Nevares-Muñiz, *Sumario de Derecho Procesal Penal Puertorriqueño*, San Juan, 5ta ed. revisada, 1998, pág. 53, "Distíngase que, todas las situaciones en que se permite un arresto sin orden emitida previamente por un juez, <u>presuponen</u>

<u>la existencia de causa probable o alguna creencia razonable</u>

<u>de que el arrestado es autor de un delito</u>." (**Énfasis suplido.**)


**III**

No debe existir duda alguna sobre el hecho de que, si un agente del orden público tiene conocimiento, ya sea personalmente o por información fidedigna a esos efectos, de que existe una orden de arresto --que está vigente y pendiente-- contra un ciudadano en particular, resulta obvio que dicho agente puede proceder a poner bajo arresto a dicho ciudadano, al encontrarse con éste, sin que sea requisito que el oficial del orden público tenga en su poder copia de la referida orden.[2]

Esa, sin embargo, <u>no</u> es la situación a la que hoy nos enfrentamos. En el presente caso, el agente <u>no</u> tenía conocimiento de que existiera una orden de arresto contra la peticionaria Calderón Díaz. La <u>única</u> información con la que contaba el oficial del orden público en el caso que hoy ocupa nuestra atención era a los efectos de que: había visto una foto de ella en el cuartel de la policía; que según su <u>recuerdo</u> a ella se le "relacionaba" con la investigación de un asesinato; y que el Cuerpo de Investigaciones Criminales (C.I.C.) de la Policía estaba tratando de "localizarla".

Aplicando la norma interpretativa sobre los motivos fundados, sinónimo a la "causa probable", forzoso resulta concluir que la información con que contaba el agente era

_____

insuficiente para que un juez determinara causa probable para expedir una orden de arresto. Del mismo modo, dicha información no cumple con los "motivos fundados", para arrestar sin orden, que requiere la Regla 11 de Procedimiento Criminal.

Es de notar que los hechos escuetos reseñados en los autos dejan muchas interrogantes sobre las circunstancias específicas que llevaron al agente a efectuar el arresto sin orden. Por ejemplo, se desconoce qué tipo de relación tenía la acusada con el asesinato; si existía una orden de arresto contra ella por dicho asesinato; la conexión o vínculo de la acusada con el supuesto asesinato; si el C.I.C. la buscaba porque era un testigo o la autora del delito.

No podemos obviar el hecho de que tanto el arresto como registro sin orden se presumen inválidos y es al Ministerio Público <u>al que le compete rebatir esa presunción mediante prueba y hechos concretos sobre las circunstancias excepcionales que requirieron la intervención estatal sin orden judicial</u>. El caso de autos, huérfano de hechos concretos o prueba que apunte a la comisión de un delito, <u>no</u> configura una situación excepcional que valida la intervención estatal y la privación de la libertad de un ciudadano.

Somos del criterio que, bajo esas circunstancias, el Agente Meléndez Hernández <u>no</u> tenía "motivos fundados" para intervenir y arrestar a la peticionaria Calderón Díaz al amparo de ninguno de los incisos de la Regla 11 de

---

[2] Véase: Regla 8(c) de Procedimiento Criminal.

Procedimiento Criminal. La "información" con que contaba el agente en la madrugada del 21 de abril de 2001 no era suficiente en derecho ni cualificaba como los "motivos fundados" o la "causa probable" requerida por nuestro ordenamiento jurídico para intervenir con la libertad de uno de nuestros conciudadanos.

Ello así ya que, no podemos perder de perspectiva que, para establecer los motivos fundados, no basta una mera sospecha, sino que es preciso poseer información que indique la posible comisión de un delito. Dicho de otro modo, los motivos fundados no equivalen a una anuencia para intervenir con personas por meras sospechas o meros caprichos. "[N]o podemos permitir que la policía arreste a cualquier ciudadano en cualquier momento y en cualquier lugar a base de la más mínima sospecha". Pueblo v. Castro Santiago, 123 D.P.R. 894 (1989). Reafirmamos que deben existir circunstancias excepcionales que justifiquen la existencia de motivos fundados para efectuar un arresto sin orden. El caso de marras no configuró una circunstancia excepcional que justifique la intervención del agente y la privación de la libertad de una ciudadana, en clara contravención a las garantías constitucionales.

Un recuerdo, sin más, no establece el motivo fundado, sino que el mismo más bien equivale a una sospecha. "Si esto se permitiese, en aras de la protección policíaca indudablemente necesaria, nos convertiríamos en un estado policial indudablemente repudiable." Pueblo v. Rey Marrero,

ante, pág. 748. Recalcamos, el mero hecho o la mera sospecha infundada no constituye motivo fundado. Por ende, el arresto sin orden en el presente caso es inválido e ilegal ya que no existió ese mínimo exigible para activar la aplicación de la Regla 11 (c) de Procedimiento Criminal.

IV

El Estado nos señala que, a modo de excepción a las antes mencionadas garantías constitucionales, y en ciertas circunstancias, un registro sin orden judicial de un sospechoso y del área a su alcance es lícito cuando el registro es _incidental_ a un arresto válido. Pueblo v. Pacheco Báez, ante; Pueblo v. Dolce, 105 D.P.R. 422 (1976); Pueblo v. González Rivera, ante.

Sin embargo, la existencia de un arresto previo válido constituye condición imprescindible para ratificar un registro sin orden judicial, esto es, con la orden correspondiente, o sin orden, en los casos que autoriza la Regla 11 de Procedimiento Criminal. Cuando se carece de la correspondiente orden de arresto, es preciso evaluar la conducta previa al registro para determinar si efectivamente existía la causa probable o el motivo fundado a base de los mencionados criterios de razonabilidad. Pueblo v. Serrano Cancel, ante; Pueblo v. Ortiz Alvarado, ante.

En cuanto a este tema, por último, debemos señalar que el hecho de que se ocupe evidencia delictiva no convalida un arresto ilegal. Pueblo v. Vázquez Méndez, ante; Pueblo v.

González Rivera, 100 D.P.R. 651, 655 (1972). Es decir, el mero hecho de que se encuentre evidencia delictiva en un registro no legitima un arresto, sin orden, que es inválido o ilegal. Id.; Pueblo v. Serrano Cancel, ante; Pueblo v. Ortiz Alvarado, ante, 48; Pueblo v. Pacheco Báez, 130 D.P.R. 664 (1992).

V

El Estado aduce, además, el argumento de que la evidencia (cocaína) que el agente ocupó era una evidencia "abandonada" por la peticionaria Calderón Díaz, razón por la cual no procede decretar su supresión. A la luz de los hechos particulares del presente caso, dicho argumento ni es correcto ni resulta convincente. Veamos.

No hay duda sobre el hecho de que, como excepción a la garantía contra registros y allanamientos ilegales o irrazonables, evidencia arrojada o abandonada no goza de una expectativa razonable de intimidad, razón por la cual, de ordinario, procede su ocupación y su presentación y admisión en evidencia. Pueblo v. Ortiz Martínez, 116 D.P.R. 139 (1985); Pueblo v. Lebrón, 108 D.P.R. 324 (1979).

Es de notar, sin embargo, que en Pueblo v. Ortiz Zayas, 122 D.P.R. 567 (1988), reconocimos, y enfatizamos, a la página 574, que:

> "......aun cuando un objeto abandonado generalmente puede ser obtenido y utilizado para propósitos evidenciarios por la Policía, no es así si dicho abandono se debió a la coerción ejercida por una intervención ilegal de la Policía. La Fave, *op. cit.*, pág. 471; *Commonwealth v. Pollard*, 299 A.2d 233 (Pa. 1973); *State v. Reed,* 284 So.2d 574 (1973). Así cuando una persona se libra de la posesión de un objeto en

**respuesta a un esfuerzo de la Policía por realizar un arresto o registro ilegal**, los tribunales **no** han vacilado en declarar la evidencia inadmisible. *United States v. Beck*, 602 F.2d 726 (5to Cir. 1979); *United States v. Newman*, 490 F.2d 993 (10mo Cir. 1974); *McDaniel v. State*, 307 So.2d 710 (1974); *People v. Shabaz*, 378 N.W.2d 451 (1985); *State v. Dineen*, 296 N.W.2d 421 (1980); *Com. v. Harris*, 421 A.2d 199 (Pa. 1980); *Com. v. Barnett*, 424 A.2d 867 (Pa. 1981).[3] (Enfasis suplido.)

Posteriormente, este Tribunal, en <u>Pueblo</u> v. <u>Serrano Cancel</u>, ante --caso en que decretamos que la Policía de Puerto Rico había intervenido, y detenido, ilegalmente un vehículo de motor, en el cual ocuparon evidencia delictiva-- se resolvió que:

> "Siendo ello así, la posterior ocupación del arma de fuego en el vehículo <u>ilegalmente</u> detenido resulta ser <u>igualmente ilegal</u>. Esto por dos razones, a saber: en primer lugar, habiéndose determinado que el arresto efectuado fue ilegal, no cabe hablar del registro, o la ocupación de evidencia, incidental a un arresto legal; registro que incluye no sólo la persona del arrestado sino el área bajo el control y al alcance de éste. *Pueblo v. Pacheco Báez*, ante, pág. 670. En segundo término, la ocupación del arma en el presente caso <u>es consecuencia directa de la acción ilegal original de deterner el vehículo</u>; esto es, la ocupación realizada es "*fruto del árbol ponzoñoso*". Véase: Sección 10 del Artículo II de nuestra Constitución; *Pueblo v. Miranda Alvarado*, Opinión y Sentencia de 2 de junio de 1997, 97 JTS 84; Resumil de Sanfilipppo, O., *Práctica Jurídica de Puerto Rico, Derecho Procesal Penal*, Equity Publishing Co., 1990, Tomo I, pág. 306; Chiesa Aponte, E., *Derecho Procesal Penal de Puerto Rico y Estados Unidos*, 1$^{era}$ed., Colombia, Tercer Mundo Editores, 1991, Vol. I, pág. 317."

---

[3] En dicho caso, <u>no</u> se suprimió la evidencia ocupada ya que, <u>específicamente</u>, este Tribunal <u>concluyó</u> que en el mismo "...el acusado arrojó la envoltura <u>sin</u> que mediara actuación policíaca, por lo que el abandono no puede ser consecuencia de conducta ilegal alguna." Véase: <u>Pueblo</u> v. <u>Ortiz Zayas</u>, ante, a la página 576.

En el presente caso, como antes expresáramos, la intervención que realizara, y el arresto que llevara a cabo, el agente Meléndez Hernández con la peticionaria Calderón Díaz en la madrugada del 21 de abril de 2000 fue una completamente ilegal. Siendo ello así, la ocupación de la bolsita plástica con cocaína es igualmente ilegal y, por ende, inadmisible en evidencia. Ello por dos (2) razones, a saber: por cuanto el alegado abandono de la evidencia, de parte de la peticionaria Calderón Díaz, fue el producto de "...la coerción ejercida por una intervención ilegal de la Policía ...", Pueblo v. Ortiz Zayas, ante, y, en segundo término, por razón de que la ocupación de dicha evidencia fue "...consecuencia directa de la acción ilegal original de detener..." a la peticionaria Calderón Díaz. Pueblo v. Serrano Cancel, ante.

## VI

Por los fundamentos antes expuestos, procede decretar la revocación de la resolución emitida en el presente caso por el Tribunal de Circuito de Apelaciones y, en consecuencia, de la resolución emitida en el caso por el Tribunal de Primera Instancia, denegatoria de la supresión solicitada; devolviéndose el caso al foro primario para procedimientos ulteriores compatibles con lo aquí resuelto.

Se dictará Sentencia de conformidad.

**FRANCISCO REBOLLO LOPEZ**
**Juez Asociado**

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

        vs.                     CC-2001-228      CERTIORARI

Celimar Calderón Díaz

    Acusada-peticionaria

**SENTENCIA**

San Juan, Puerto Rico, a 5 de abril de 2002

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente se dicta Sentencia revocatoria de la Resolución emitida en el presente caso por el Tribunal de Circuito de Apelaciones, Circuito Regional VI de Caguas, Humacao y Guayama; devolviéndose el caso al foro primario para procedimientos ulteriores compatibles con lo aquí resuelto.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo Interina. El Juez Asociado señor Fuster Berlingeri concurre en el resultado sin opinión escrita. El Juez Presidente señor Andréu García disiente sin opinión escrita. El Juez Asociado señor Rivera Pérez no intervino.

**Carmen E. Cruz Rivera**
**Secretaria del Tribunal Supremo Interina**